# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

SANDY BAY OYSTER CO., INC.,    )
et al.,    )
    )
    Plaintiffs,    )
    )
v.    )    **CIVIL ACTION NO.:**
    )    **1:25-cv-00478-KD-C**
CARTER'S CONTRACTING    )
SERVICES, INC., et al.,    )
    )
    Defendants.    )

## ORDER

This cause is before the Court on the Notice of Removal (Doc. 1) filed by Great Lakes Dredge & Dock Company, LLC ("Great Lakes"); the Motion to Remand (Doc. 12) filed by Plaintiffs Sandy Bay Oyster Co., Inc. ("Sandy Bay"), Barry Wyatt d/b/a Firefly Landing Oyster Company, Inc. ("Firefly Landing"), and Bama Bay Oyster Company, LLC ("Bama Bay")(collectively "Plaintiffs"); the Opposition of Defendant Great Lakes Dredge & Dock Company, LLC to Plaintiffs' Motion to Remand (Doc. 16); the Plaintiffs' Reply to Defendant's Opposition to Remand (Doc. 18); the Plaintiffs' Brief Regarding Immunity Affirmative Defense (Doc. 26); Great Lakes' Memorandum in Opposition (Doc. 33); the Plaintiffs' Notice of Filing Exhibit in Support of Motion to Remand (Doc. 37); Great Lakes' Notice of Supplemental Authority (Doc. 38); and the Plaintiffs' Response to Great Lakes Notice of Supplemental Authority (Doc. 40). Upon consideration of the foregoing, it is determined for the reasons stated herein that the Motion to Remand should be **DENIED**.

1

## I.      Procedural History[1]

On November 15, 2024, Sandy Bay filed a complaint (Doc. 1-5) against Carter's, Weeks and Great Lakes in the Circuit Court of Mobile County, Alabama (Cause No. 02-CV-2024-902978). In the Complaint, Sandy Bay alleged that Great Lakes was "currently dredging and widening the Mobile Bay ship channel" (Doc. 1-5, PageID.1208), that the Defendants' separate dredging operations created "massive amounts of sediment displacement without proper mitigation procedures" and that these operations caused an oyster mortality event in May 2024 on Sandy Bay's oyster farm. (*Id*. at 1209).

Great Lakes filed a motion to dismiss or for more definite statement because Sandy Bay's complaint lacked specificity concerning the nature and timing of defendants' alleged conduct given the geographic remoteness of Sandy Bay's farms from dredging performed by Great Lakes with respect to the Mobile Ship Channel widening project. The other defendants filed similar motions. At a hearing on the Defendants' motions to dismiss, the court ordered Sandy Bay amend its complaint to provide more specificity to the time of the alleged causative dredging operations but otherwise denied the defendants' motions.

On March 19, 2025, Sandy Bay filed an amended complaint. (Doc.1-4). The amended complaint joined a new plaintiff, Firefly Landing Oyster Company, Inc. ("Firefly").  Firefly only asserted claims against Carter's, not against Great Lakes. However, the amended complaint includes a paragraph regarding timing that appears to apply to all defendants, not just Firefly.  The paragraph states: "On or beginning in the spring of 2023 and into the winter and spring months of 2024 after Defendants were performing operations including, but not limited to, dredging, sediment removal, sediment relocation, with such activities continuing to this present day."

---

[1] Procedural history is taken primarily from Great Lakes' briefing.

(Doc.1-4, PageID.1182). Great Lakes claims this paragraph was the only additional information concerning timing provided in the amended complaint.

On October 22, 2025, Sandy Bay filed a second amended complaint (Doc. 1-2). Sandy Bay added a new plaintiff, Bama Bay. Bama Bay alleged that the defendants collectively caused a mortality event in May 2025 at Bama Bay's oyster farm. In the second amended complaint, plaintiffs alleged that "On or beginning in the spring of 2023 and into the winter of 2024, Defendants were performing operations including, but not limited to, dredging, sediment removal, and sediment relocation, with such activities continuing to this present day. (*Id.*).

On November 21, 2025, Great Lakes filed its Notice of Removal (Doc. 1), within thirty days of receipt of the second amended complaint. On December 19, 2025, Plaintiffs filed their Motion to Remand. (Doc. 12).

On December 23, 2025, Plaintiffs filed a Motion to Seal Exhibits for Plaintiffs' motion to remand. (Doc. 14, 15). The Court denied the motion without prejudice with leave to refile its motion in compliance with the Court's Order. (Doc. 34). On March 4, 2026, Plaintiffs filed redacted exhibits to be considered with the motion to remand.

Counsel for Sandy Bay and Great Lakes presented oral argument on the Motion to Remand. During the hearing, the Court raised the issue of the government contractor immunity defense and its implications, if any, on removal pursuant to 28 U.S.C. §1442(a). In response, counsel for Great Lakes presented argument and cited to *Ayotte v. Boeing Co.*, 316 F. Supp. 3d 1066 (N.D. Ill. 2018). Sandy Bay orally requested leave to brief the findings of the district court in *Ayotte* related to the government contractor immunity defense and 28 U.S.C. §1442(a), which the Court granted. (*See* Doc. 26, Plaintiffs' Brief Regarding Immunity Affirmative Defense). Thereafter, Great Lakes was granted permission and submitted its memorandum in opposition to Plaintiffs' brief. (*See* Doc.

33). On March 4, 2026, Great Lakes filed a notice of supplemental authority (Doc. 38) regarding

oral argument concerning *Ayotte* in further support of its opposition to the motion to remand. On

March 9, 2026, Plaintiffs moved to file a response to Great Lakes' notice and filed the response

that same day. (*See* Doc. 40).

## II.    Analysis & Conclusions of Law

Great Lakes argues this Court has original subject-matter jurisdiction over this action

pursuant to 28 U.S.C. §1442, the federal officer removal statute.  That statute provides, in part, as

follows:

> (a)    A civil action or criminal prosecution that is commenced in a State
> court and that is against or directed to any of the following may be removed
> by them to the district court of the United States for the district and division
> embracing the place wherein it is pending:
>
> (1)    The United States or any agency thereof or any officer (or any
> person acting under that officer) of the United States or of any agency
> thereof, in an official or individual capacity, for or relating to any act under
> the color of such office or on account of any right, title or authority claimed
> under any Act of Congress for the apprehension or punishment of criminals
> or the collection of the revenue.

28 U.S.C. §1442(a)(1). Since Great Lakes is not a federal office or agency itself, it must satisfy

the following test to determine whether it may effect removal under §1442: 1) it is a person within

the meaning of the statute who acted under a federal officer; 2) it performed the actions for which

it is being sued under color of federal office; and 3) it must raise a colorable federal defense.[2] *See*

*Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017). Great Lakes claims it

properly removed this action based on 28 U.S.C. §1442 and the only question before the Court is

whether the removal was timely. (Doc. 16, PageID.3194). Sandy Bay does not dispute that Great

---

[2] *See* Great Lakes' Notice of Removal regarding the three elements necessary to effect removal
under §1442. (Doc. 1, PageID.9-15).

Lakes' "removal may arguably satisfy the substantive requirements for federal-officer jurisdiction under 28 U.S.C. §1442(a). (Doc. 12, PageID.2872). Sandy Bay moves for remand solely on the ground that Great Lakes' removal was untimely under 28 U.S.C. §1446.

The parties agree that §1442 is to be construed liberally. *See Craig v. A.W. Chesterton Co.*, 673 F. Supp. 3d 1271, 1276 (S.D. Ala. 2023) ("Courts are to construe removal under §1442(a) liberally); *see also Morgan v. Bill Vann Co.*, No. CIV.A. 11-0535-WS-B, 2011 WL 6056083 (S.D. Ala. Dec. 6, 2011) (citing *Hagen v. Benjamin Foster Co.,* 739 F.Supp.2d 770, 777 (E.D.Pa.2010) ("the Court must broadly construe Defendants' ability to remove under Section 1442(a)(1) as to avoid frustrating its policy objective of having the validity of the defense of official immunity tried in a federal court by applying a narrow, grudging interpretation"). However, Sandy Bay contends that even when construed liberally under §1442, removal must comply with the procedural requirements of §1446, including timeliness. (Doc. 12, PageID.2872). Great Lakes contends the thirty-day deadline under §1446 does not apply to federal officer removal under §1442, but even if it did apply, it must be construed liberally in favor of federal officer removal, which would mean Great Lakes' removal within thirty days of receiving the Plaintiffs' second amended complaint was timely. (Doc. 16).

Pursuant to 28 U.S.C. §1446, a notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." "[U]nder the first paragraph of §1446(b), a case may be removed on the face of the complaint if the plaintiff has alleged facts sufficient to establish the jurisdictional requirements." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215, n. 63 (11th Cir. 2007). A case also "becomes removable when three conditions are present: there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the

5

defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists." (*Id*.). "To assess the timeliness of removal under §1446(b), the Court must consider "the document received by defendant from the plaintiff – be it the initial complaint or a later received paper – and determine[ ] whether that document and notice of removal unambiguously establish federal jurisdiction." *Craig v. A.W. Chesterton Co.*, 673 F. Supp. 3d 1271, 1277 (S.D. Ala. 2023) (citing *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007)). As explained in *Lowery*, the "document" triggering the thirty-day removal period must contain an unambiguous statement that clearly establishes federal jurisdiction. *Id*.; *see also Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5th Cir.2002).

The parties here dispute when the running of the removal period began. To answer that question, the document containing an unambiguous statement clearly establishing federal jurisdiction and thus triggering removal, must be identified. The opinions of *Morgan v. Bill Vann Co.*, No. CIV.A. 11-0535-WS-B, 2011 WL 6056083 (S.D. Ala. Dec. 6, 2011), and *Craig*, discuss that removal is triggered when a connection is established between the alleged injury and the federal contractor alleged to have caused the injury. In *Morgan*, the court concluded the plaintiff's deposition testimony connecting his injury to products aboard U.S. Navy ships constituted the first time defendants could "intelligently ascertain the availability of 28 U.S.C. §1442(a)(1)." 2011 WL 6056083, at *12. Because the defendants in *Morgan* filed their Notice of Removal within 30 days following the plaintiff's deposition, defendants' notice was timely under 28 U.S.C. §1446(b). *Id*. In *Craig*, the court analyzed when removal was triggered under the standards applicable to "federal officer" removal jurisdiction and §1446(b). *Craig,* 673 F. Supp. 3d 1271. The *Craig* court determined that Plaintiff's discovery responses alleging for the first time the plaintiff's exposure

6

to defendant's products on a military vessel triggered the running of the 30-day removal period under §1446(b). *Id*.

Sandy Bay attempts to distinguish this case from *Morgan* and *Craig*. According to Sandy Bay, federal officer jurisdiction was plainly established in this case at the outset. (Doc. 12). Sandy Bay claims the initial complaint, the parties' motion-to-dismiss briefing, discovery, and the first amended complaint each contained clear and unambiguous allegations establishing the connection between the Plaintiffs' alleged harm and the government contractor, Great Lakes. Sandy Bay reasons this case is unlike *Morgan* and *Craig* because, here, there was no uncertainty requiring later discovery to connect Defendants' conduct to a federal function. Sandy Bay further contends Defendants had all information necessary to ascertain removability from the beginning but did not act within the 30-day window prescribed by §1446, making removal untimely.

In the underlying state court action, Great Lakes moved to dismiss Sandy Bay's original complaint due to the lack of specificity concerning the nature and timing of the Defendants' alleged conduct and the geographic remoteness of Sandy Bay's farm from any dredging by Great Lakes with respect to the Mobile Ship Channel widening project. (Doc. 16, PageID.3196). The court ordered Sandy Bay amend its complaint and provide more specificity as to the timing of the alleged causative dredging operations. Thereafter, Sandy Bay filed the first amended complaint that joined a new plaintiff, Firefly. Firefly only asserted claims against Carter's. Plaintiffs' new alleged time period for the dredging that allegedly caused an oyster mortality event, stated as follows:

> On or beginning in the spring of 2023 and into the winter and spring months of 2024 after Defendants were performing operations including, but not limited to, dredging, sediment removal, and sediment relocation, with such activities continuing to this present day.

(Doc. 16, PageID.3197, Doc. 1-4, PageID.1186). Great Lakes describes the above time period as ambiguous and explains that Great Lakes was not performing dredging under a federal contract

7

"[o]n or beginning in the spring of 2023 and into the winter and spring months of 2024," and its dredging operations in and around Mobile Bay that did occur prior to the alleged May 2024 oyster mortality event began in February 2023 and ended in May 2023. Great Lakes claims Sandy Bay's allegations against Great Lakes in its original complaint and in its amended complaint were not plausibly related to any federal contract dredging by Great Lakes. Great Lakes identifies the Plaintiffs' second amended complaint as the document that rendered the case removable pursuant to 28 U.S.C. §1442(a), 28 U.S.C. §1446(b), and/or the revival doctrine.  In the second amended complaint, the Plaintiffs alleged,

> On or beginning in the spring of 2023 and into the winter of 2024, Defendants were performing operations including, but not limited to, dredging, sediment removal, and sediment relocation, with such activities continuing to this present day.

(Doc. 16, PageID.3198, Doc.1-2, PageID.1152). The Plaintiffs alleged this period of dredging caused a May 2025 oyster mortality event. (Doc.16, PageID.3199). According to Great Lakes, the new allegation of the May 2025 oyster mortality event in Mobile Bay was the first time a Plaintiff in the state court lawsuit had alleged an injury that could conceivably coincide in time with the federally contracted dredging by Great Lakes on the Mobile Ship Channel project. (*Id*. at PageID.3140).

The allegations in the original complaint do not unequivocally and unambiguously establish a basis for removal. The original complaint made claims against multiple defendants for dredging during an unspecified period of time[3] that allegedly caused an oyster mortality event at Sandy Bay's farm in May 2024.  All named Defendants were not exclusively working for or under

---

[3] The original complaint alleged Great Lakes "is currently dredging and widening the Mobile Bay ship channel." (Doc.1-3, PageID.1165). Great Lakes knew this allegation to be inaccurate since it was not dredging and widening the ship channel in November 2024. (Doc. 16, PageID.3196, n.2).

the direction of the federal government. The original complaint does not connect the alleged harm(s) to dredging that Great Lakes performed under the direction of the federal government.  In the context of federal officer removal under 28 U.S.C. §1446, the Defendants were not required "to guess that the action might possibly be removable." *Morgan*, 2011 WL 6056083, at *11; *Craig*, 673 F.Supp. 3d at 1279 ("30-day removal period is not triggered by an ability to speculate removability."). Moreover, any subjective knowledge of Great Lakes was irrelevant to trigger removability. *See e.g. Ragusa v. Louisiana Ins. Guar. Ass'n*, 573 F. Supp. 3d 1046, 1052 (E.D. La. 2021).

Sandy Bay's response to Great Lakes' motion to dismiss, the first amended complaint, and the Quality Control Reports produced by Great Lakes in discovery, would not sufficiently notify Great Lakes that the case was removable. Sandy Bay's response to Great Lakes' motion to dismiss does not connect the alleged May 2024 oyster mortality event to dredging by Great Lakes under any federal contract. The first amended complaint added a new plaintiff and attempted to clarify the timing of Defendants' dredging operations at the state court's direction. Great Lakes has admitted to dredging during the months of March, April and May 2023. But the language of the first amended complaint - "on or beginning in the spring of 2023 and into the winter and spring months of 2024"- cannot be considered sufficient to have put Great Lakes on notice that removal was available. The statement "into the winter and spring months of 2024" does not allege an obvious connection between the alleged injuries to any actions by a federal contractor.

The Quality Control Reports produced by Great Lakes in discovery in July 2025 are dated March 1, 2023 through May 26, 2023. Sandy Bay claims the aforementioned reports were prepared by inspectors from the United States Army Corps of Engineers and document turbidity monitoring associated with Great Lakes' dredging operations. Sandy Bay did not provide the Court with Great

9

Lakes' answers to Interrogatories or Great Lakes' responses to Requests for Production of Documents for consideration with its motion to remand as supporting evidence. Sandy Bay claims the involvement of the Corps of Engineers in supervising and monitoring dredging activity further underscored the "potential" applicability of federal officer jurisdiction. (Doc.12, PageID.2883). Even though the reports show dredging by Great Lakes during the months of March, April and May 2023, temporally connecting Great Lakes' dredging with a portion of the dredging time period alleged by Sandy Bay, the reports do not connect Great Lakes' dredging under the direction of the federal government with the May 2024 oyster mortality event alleged in the initial and first amended complaints.  At the time the Quality Control Reports were produced in discovery, the second amended complaint had not yet been filed. Again, Great Lakes was not required to guess that this action was removable. It was not unequivocally clear and certain from the Quality Control Reports that the case was removable when the dates of dredging in the reports do not align with the dates alleged in the operative complaint at that time.

In its second amended complaint, the Plaintiffs alleged a new dredging timeline for the dredging that allegedly caused an oyster mortality event in May 2025. Great Lakes contends the alleged May 2025 event coincided with Great Lakes' dredging under a federal contract, making it clear and unequivocal that this action was removable under 28 U.S.C. §1442. In the new complaint, Plaintiffs alleged that the dredging that caused a May 2025 mortality event at Bama Bay's oyster farm began in the spring of 2023 and into the winter of 2024. Review of the second amended complaint shows that, once again, the face of the pleading does not specifically connect the alleged injury with alleged conduct done under the direction of the federal government.  However, the temporal connection with dredging performed by Great Lakes under a federal contract was evident. As the Quality Control Reports show, Great Lakes was dredging under a federal contract in spring

10

of 2023.  The declaration of Garrett Gibson shows that Great Lakes began Phase 2a of dredging for the Corps of Engineers in December 2024 and completed its work in October 2025. (Doc. 2-1, PageID.1726-27). Such a temporal connection would be sufficient notice that this case was removable.

Great Lakes also relies on the revival doctrine as an alternative basis for removal. (See Doc. 1, PageID.7, Doc. 16, PageID.3210-3214). Plaintiffs opine that a defendant may not revive a removal period based on an amended pleading that merely adds a new plaintiff and reiterates previously alleged facts. (*See* Doc. 12, PageID.2844-2845). Because Great Lakes' removal of this action is found to be proper, consideration of the revival doctrine and its applicability under these circumstances is unnecessary.

In support of its remand argument, Plaintiffs contend that Great Lakes waived its right to remove because it chose not to remove this action within thirty days of the First Amended Complaint under 28 U.S.C. §1446. (Doc.12, PageID.2885). Plaintiffs briefly argue that Great Lakes elected to litigate in state court by filing a motion to dismiss and motion for more definite statement rather than remove this action to federal court. (Doc. 12, PageID.2877). In response, Great Lakes argues responsive and defensive actions as well as serving discovery responses are insufficient to establish a waiver of a right to remove. The undersigned agrees that Great Lakes did not waive its right to remove based on procedural actions taken in state court.

During oral argument on Sandy Bay's motion to remand, the Court raised the issue of whether Great Lakes' immunity defense impacts the timeliness of removal. Citing *Ayotte v. Boeing Co.*, 316 F. Supp. 3d 1066, 1076 (N.D. Ill. 2018), Great Lakes argued the pleading of an affirmative immunity defense is not sufficient to begin the running of the thirty-day window. The Court permitted the parties to submit responsive briefing for consideration. (*See* Doc. 26, 33).

11

Plaintiffs dispute Great Lakes' reliance on *Ayotte.* Plaintiffs argue, pursuant to Fed. R. Civ. P. 11, that Great Lakes' assertion of an immunity affirmative defense shows Great Lakes had an informed basis for asserting such a defense and represented there was a good-faith possibility Great Lakes would rely on the defense. (Doc. 26, PageID.3241-3246).[4] The Plaintiffs contend that because Great Lakes had sufficient knowledge to remove the case before November 2025, Great Lakes' reliance on the *Ayotte* standard is incorrect. (Doc. 26, PageID.3246). According to the Plaintiffs, whether a federal contract would be at issue was not merely a possibility, as federal officer jurisdiction was clear to Great Lakes from the outset based on the initial and first amended complaints. (*Id*.).

In response, Great Lakes argues the pleading of an immunity affirmative defense cannot be used to argue the complaint was initially removable or triggered the thirty-day clock for removal. (Doc. 33, PageID.3279-3281). Great Lakes reasons that a defendant's knowledge does not make the case removable because the plaintiff must produce a document that unambiguously and unequivocally establishes jurisdiction to trigger removal. (*Id*. at PageID.3282). Great Lakes maintains the original and first amended complaints were vague, general, and ambiguous and "potentially" implicated federal dredging, which is why Great Lakes raised immunity defenses but under Eleventh Circuit law, that does not mean that the action was removable. (Doc. 33, PageID.3282). Further, Great Lakes claims Plaintiffs conflate the level of proof required to assert an affirmative defense with the standard required to remove a case under the federal officer removal statute. (*Id*. at PageID.3283).

In its Notice of Supplemental Authority (Doc. 38), Great Lakes asserts that the holding in

---

[4] Plaintiffs also cite *Beasley v. O'Reilly Auto Parts*, No. 1:20-00092-N, 2021 U.S. Dist. LEXIS 245468 (S.D. Ala. Mar. 10, 2021).

*Geo Group, Inc. v. Menocal*, No. 24-758, 2026 WL 513536 (U.S. Feb. 25, 2026), in which the United States Supreme Court determined that the federal contractor defense is not an immunity defense, further supports Great Lakes' position that prior assertion of an immunity defense cannot preclude its later removal of this case under the federal officer removal statute. In response, Sandy Bay argues that *Menocal* does not change the fact that Great Lakes untimely removed this action. The undersigned finds the ruling in *Menocal* has no significant impact on whether Great Lakes timely removed this action.

Neither party has provided any binding authority to support its position regarding whether asserting an immunity affirmative defense triggers removal under §1442 or effects the timeliness of removal under §1446. In *Bouchard v. CBS Corp.*, No. 11-00458, 2012 WL 1344388 (E.D. Pa. Apr. 17, 2012), a case cited by Great Lakes, the district court distinguishes the standards required under Fed. R. Civ. P. 8(c) and 28 U.S.C. §1442(a)(1), as follows:

> [t]he possibility that a federal contract would be at issue might satisfy the burden required for asserting an affirmative defense pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, but it is not sufficient when analyzing the appropriateness of federal officer removal jurisdiction. Rule 8(c) requires a party to affirmatively state any avoidance or affirmative defense. The so-called notice pleading has always been the hallmark of Rule 8(c), which ultimately function(s) to provide the opponent with notice of the claim or defense pled. As such, an affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved. In contrast, a defendant is entitled to removal under § 1442(a) (1), only where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him to a complete defense.

*Bouchard,* 2012 WL 1344388, at *7 (citation modified). The undersigned is not convinced Great Lakes' pleading of certain affirmative defenses was proper under Fed. R. Civ. P. 8(c) (or Fed. R. Civ. P. 11) but based on requirements for removal under §1442(a), §1446 and Eleventh Circuit precedent, Great Lakes' assertion of the defenses is insufficient to trigger removability.

Considering the foregoing and applying the liberal standard for removal allowed under §1442(a) as well as the standards under §1446, it is determined that Great Lakes' notice of removal was timely. Based on this ruling, it is unnecessary to consider whether the thirty-day deadline under §1446 applies to §1442(a) and whether the revival doctrine applies under these circumstances.

**III.    Conclusion**

Accordingly, it is determined that this Court has subject matter jurisdiction over this action, and Plaintiffs' Motion to Remand is **DENIED**.

**DONE** and **ORDERED** this 8th day of May 2026.

s/**WILLIAM E. CASSADY**
**UNITED STATES MAGISTRATE JUDGE**